McKinney, J.
delivered the opinion of the court.
It appears from the bill of exceptions in this case, that in the latter part of the year 1847, the plaintiff bargained with the defendants for the purchase of a quantity of corn. Previous to the purchase, the corn had been put up in pens, on the bank of Bledsoe’s creek, near its junction with Cumberland river. The bargain was for all the corn in the pens, at the price of one dollar per barrel; and the quantity, not being then known, was to be ascertained afterwards by actual measurement. It does not appear that any time was fixed either for the measurement of the corn, or payment of the price. In the month of December, 1847, before the corn was measured, it was swept off by a flood, and wholly lost. It appears from the proof that, after the purchase, the plaintiff assumed to be owner of said *338 corn; and forbade an officer to levy upon it as defendants’ property, stating, that it belonged to him, that he had bought it and paid part of the price, and was to pay the balance on his return from market. On the other hand, there is proof that when the flood began to threaten the loss of the corn, the defendant, Robert Allen, applied to some of the witnesses to aid him in saving it, “and called it his corn at the time.” The witness, Mathews, heard a conversation between plaintiff and defendant, Robert Allen, some time after the contract for the purchase of the corn. Defendant “wished plaintiff to let him have a horse in part pay for the corn; plaintiff told him that the com was not measured and delivered to him, and he was not bound to pay until that was done; yet, to accommodate him, he would let him have the horse.”
It further appears from the proof, that between the time of the contract and the loss of the corn, plaintiff let the defendants have a horse, some pork, and a small amount of money, towards the payment of the price of said corn; to recover back the value of which the present suit was brought.
On the trial in the circuit court, the judge instructed the jury, “ That if the plaintiff bought a parcel of corn from defendants, which was in pens, separate and distinguishable from all other corn, at the price of one dollar per barrel; and there was nothing to be done by defendants but to measure it with plaintiff, and deliver it, the property in the corn vested unconditionally in the' plaintiff, and the risk was of course his.”
This instruction, we think, was incorrect. The general principle is well established, that no sale is complete, so as to vest an immediate right of property in the *339 buyer, so long as any thing remains to be done, as between the buyer and seller.
Where goods are sold by number, weight, or measure, so long as the specific quantity or measure is not separated and identified, the sale is not completed, and the goods are at the risk of the seller. Story on Con. sec. 800. The contract may be complete and binding in other respects, but the property in the goods remains in the vendor, and they are at his risk, if any act is to be done by him before delivery, either to distinguish the goods, or ascertain the price thereof. Chitty on Con. 375, note 1.
Though the subject matter of the contract be clearly ascertained, yet if the price cannot be calculated until the parties have weighed the goods, no property therein passes to the buyer till such act be done. 5 B. and C. 857; Chitty on Con. 377.
Where several bales of skins, (stated in the contract to contain five dozen in each bale) were sold at a certain sum per dozen; but it was the duty of the seller to count over the skins, to see how many each bale actually contained; and before doing so, they were consumed by fire; Lord Ellenborough and Sir James Mansfield held, that no action could be maintained against the purchaser for the value of the skins; and that the loss fell entirely upon the seller. 2 Camp., 242, See also 6 East, 614; 11 East, 210; 5 B. and C. 857.
And a mere assumption of ownership, or control by the purchaser, will not be sufficient evidence of a delivery. At most, it affords merely a presumption of delivery, which may be repelled by evidence showing that the title remained in the vendor.
*340 The foregoing authorities which, we think, lay down the law correctly, clearly show, that the circuit judge erred in directing the jury, that the property in the corn in question was vested in the plaintiff, notwithstanding the failure of the defendants to measure and deliver it. On the contrary, by reason of their failure to do so, the right of property remained unaltered; and consequently the risk and loss were exclusively theirs.
The judgment will be reversed.